DUCKER, JUDGE:
Claimant, Lelia Hurst, a resident of Salem, West Virginia, claims damages in the sum of $10,000 against the Department of Public Institutions on account of injuries sustained by her as a result of her having been stabbed in the back with a hunting knife by one Imogene Cross, an inmate of West Virginia Industrial Home for Girls located at Salem, West Virginia.
The claimant was in her home in Salem in the middle of the afternoon of July 14, 1969 when Imogene Cross who had left the grounds of Industrial Home, as an “elopee”, that is one who leaves without permission, came into claimant’s house, first holding a paring knife, saying she was going to kill claimant, and then dropping the paring knife and picking up a hunting knife which was on a buffet, and stabbed claimant as claimant attempted to escape.
The claimant’s petition alleges that her injuries have been sustained by reason of careless, negligent and wilful neglect of duty by the agents of State Commissioner of Public Institutions in permitting Imogene Cross to leave the premises of the Home and in failing to properly guard, supervise and control Imogene Cross, known to them to be a former inmate of a mental hospital in the State of West Virginia and a person known to them to be a person of unpredictable actions, and in allowing her to escape resulting in her maliciously, wilfully and intentionally stabbing and injuring the claimant as here-inbefore stated.
Imogene Cross was a patient in the Huntington State Hospital from August 1967 to April 1968, and for approximately two and a *156 half months in the Spring of 1969. On June 28, 1969, she was adjudged a delinquent by the Juvenile Court of Raleigh County, and committed to the West Virginia Industrial Home for Girls in Salem, West Virginia, and she entered the Industrial Home on July 2, 1969. A case history of her was received at the Home on July 18th, four days after her attack upon the claimant.
The evidence shows that while Imogene Cross was a mental patient at the Huntington State Hospital she was given tranquilizing drugs to “keep her under control” and Cogentin to neutralize undesirable effects from massive dosages of the tranquilizers taken, all of such drugs so given indicating they were those which would be for “patients suffering from mental illness.”
The officials and employees who received Imogene Cross were not advised or aware of anything unusual about Imogene Cross or of her prior stay in the Huntington State Hospital, except for the fact that when she first came in, another inmate, recognized her and said she was acquainted with her at the Huntington State Hospital. We think that was hardly sufficient to require those in charge of the Industrial Home to make an exceptional case of Imogene Cross, or to require special custody of her.
There were one hundred girls, housed in two dormitories, in the Home at the time of the stabbing incident. A fence surrounds the grounds and there are on active daytime duty four maintenance men and at night a watchman, but these employees are not considered as guards, although they would report anything unusual occurring. The school has fifty-five permanent employees, including matrons who serve on eight hour shifts around the clock, and a regular routine schedule is maintained. The girls are not allowed to leave the grounds, or to go shopping or to take a walk beyond the grounds without a matron. They go back and forth between the cottage and the school, and to the office, and are accompanied by a couple of matrons when they go to their meals. The school has one security cell which is used for anybody who is put under restraint. Imogene Cross was not confined to such cell as the officials did not “notice anything unusual about her behavior or conduct”.
The validity of this case rests entirely upon whether there was negligence, and, if there was negligence, whether such negligence was the proximate cause of the injuries sustained by the claimant. This *157 Court has had a similar question before it in several cases, the principles enunciated therein being applicable here, namely, Creamer v. Department of Mental Health, 8 Ct. Claims 13, and Miller v. Department of Public Institutions, 8 Ct. Claims 62, and Hogue v. Department of Public Institutions, Claim No. D-323 decided July 10, 1972. In these cases this Court has emphasized the fact that the institutions involved were not penal in character and that there must be negligence proved, for an award to be made and that the escaping of an inmate was not per se sufficient.
Though it is quite often true that there could be better systems or regulations in the operation and maintenance of penal institutions and so-called “reform” schools, such possibility is not alone a basis for the imposition of legal liability upon the part of those, such as the State, operating them. Any liability for damages to persons or property must depend upon faults constituting negligence which actually were the primary and proximate cause of damage. In the instant case, the act which caused the claimant’s damages was the stabbing attack made by Imogene Cross, not the fact that she had not been adequately restrained or kept in custody by those in charge of the Industrial Home. The Industrial Home is primarily a school for the education and the possible reformation of delinquent girls. Though the inmates are compelled by a court commitment to live and remain within its confines, they are not incarcerated in cells like criminals are in jails and penitentiaries. Because of their delinquencies, the State requires them to take education and training to avoid further degradation and in the hope they will learn to live useful lives.
In the instant case Imogene Cross was treated as all other girls in the school, confined only to the same extent, and the officials of the school knew of no reason before the incident to treat her otherwise. The case history of her was received in the usual course of operation, four days after her entrance into the school, which was not, we think, an unreasonable length of time. She gave no indication of being violent or having unusual characteristics. No specific acts or action indicating carelessness or lack of duty on the part of the officials or employees of the school have been shown. On the contrary, Imogene Cross was apprehended in a very short time after she had left the premises of the school and after the attack upon the claimant. That was well within what could have been contemplated as reasonably necessary for the officials to do. The officials of the school could not *158 have been expected to anticipate that Imogene Cross was liable to commit a criminal act if she escaped, even though such things occasionally happen. Such an act was not a reasonably foreseeable consequence of the respondent’s custody of Imogene Cross being kept in the same degree of custody applicable to all other inmates according to the procedure of the school.
This Court realizes that it is most unfortunate for anyone to suffer from the acts of an escapee from any institution operated by the State, and naturally regrets it cannot afford some relief, but the only defense which is waived in action against the agencies of the State is the immunity from suits specified in the Constitution, which immunity is the necessary basis of this Court’s jurisdiction. All other defenses are available to the State as they are in cases where individuals and corporations are defendants. Failure to prove actionable negligence is such a defense and such negligence must be the proximate cause.
We are of the opinion that the claimant has not proved by a preponderance of the evidence that there was actionable negligence on the part of the respondent, and we, therefore, disallow her claim.
Claim disallowed.